THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FISH, LLC, *et al.*,

                Plaintiffs,

      v.

HARBOR MARINE MAINTENANCE & SUPPLY, INC.,

                Defendant.

CASE NO. C17-0245-JCC

ORDER

This matter comes before the Court on Plaintiffs' motion for partial summary judgment (Dkt. No. 39) and Defendant's motion to withdraw admissions (Dkt. No. 46). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part Plaintiffs' motion (Dkt. No. 39) and DENIES Defendant's motion (Dkt. No. 46) for the reasons explained herein.

**I.   BACKGROUND**

Unless otherwise indicated, the following facts are uncontroverted. Zane White and his limited liability company, Fish LLC (collectively "Plaintiffs"), engaged Defendant to upgrade the engines on Plaintiffs' vessel and make other repairs. (Dkt. No. 39 at 3.) Defendant brought the vessel ashore and replaced the engines at its boat yard, but did not finish the job on land. (*Id.* at 6.) It launched the vessel and towed it to Plaintiffs' boathouse on November 3, 2015, intending

to finish the job on-site. (Dkt. No. 40-7 at 2–3.) The vessel sank in the boathouse on or about November 22, 2015 before any additional work could be performed. (Dkt. No. 39 at 8.)

No one witnessed the vessel sink. Holly James, an independent boat detailer, testified that she entered the boathouse on the evening of Friday November 20th to return items to Mr. White. (Dkt. No. 45-1 at 32.) She observed the vessel floating at its normal position in the water without the bilge pump running. (*Id*. at 33, 34.) Two days later, Port of Everett personnel discovered the vessel sunken in the boathouse. (Dkt. No. 40-16 at 5.) Zane White was out of state throughout this period and has no personal knowledge regarding the sinking. (Dkt. Nos. 39 at 15, 44 at 4.)

Plaintiffs bring claims for breach of a bailment agreement, breach of contract, breach of the implied warranty of workmanlike performance, and negligence and/or gross negligence. (Dkt. No. 14 at 4–7.) Defendant counter-claims for breach of contract, alleging Plaintiffs failed to pay amounts owing for the work it did on the vessel before it sunk along with the salvage and storage services Defendant rendered after the vessel sunk. (Dkt. No. 15 at 8–9.) Trial in this matter is scheduled to begin June 4, 2018. (Dkt. No. 16.)

Plaintiffs now move for partial summary judgment. (Dkt. No. 39.) They ask the Court to: (1) find that Defendant is liable as a matter of law for all but Plaintiffs' negligence claims, (2) dismiss some of Defendant's affirmative defenses, and (3) dismiss Defendant's counter-claim. (*Id*. at 1.) By separate motion, Defendant asks the Court to withdraw certain admissions it made by virtue of an untimely response to Plaintiffs' second request for admissions. (Dkt. No. 46.)

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247–50

(1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49. Ultimately, summary judgment is appropriate only against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Breach of Bailment Agreement

Plaintiffs move for summary judgment on their claim that Defendant breached the bailment agreement. (*See generally* Dkt. No. 39.) A bailment is created when property is delivered to and accepted by a recipient with the implied promise that the property will be returned once the purpose of the bailment has been fulfilled. 19 WILLISTON ON CONTRACTS § 53:2 (4th ed.) (May 2017 update). "It has long been established that the law of bailment is applicable to suits for damages to or loss of a vessel that has been left with another for purposes of repair." *Goudy & Stevens, Inc. v. Cable Marine, Inc.*, 924 F.2d 16, 18 (1st Cir. 1991) (citing *Buntin v. Fletchas*, 257 F.2d 512, 513 (5th Cir. 1958)). Further, if a bailor demonstrates that a bailee had exclusive possession of property and then returned the property damaged, a presumption of negligence attaches. *Natl. Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 832 (5th Cir. 2014). To overcome this presumption, the bailee must make an affirmative showing that it either exercised reasonable care or that its negligence was not the proximate cause of the damage. *Id*.

It is undisputed that Plaintiffs delivered the vessel to Defendant in a seaworthy condition. (*See generally* Dkt. Nos. 39, 44.) At issue are the remaining elements. The Court finds Defendant presents sufficient evidence to create genuine of fact regarding whether the bailment terminated

prior to the sinking and whether Defendant's actions were the proximate cause of the damage.

### 1. Termination of the Bailment

Defendant alleges Plaintiffs instructed it to move the vessel to the boathouse, thereby terminating the bailment. (Dkt. No. 44 at 14); (*see* Dkt. No. 45-1 at 11, 17) (supporting testimony from Defendant's representative and one of its employees). The Court must accept this testimony as true. *See Anderson*, 477 U.S. at 247–50 (1986) (a court must view all facts and inferences in favor of the nonmoving party when considering a motion for summary judgment). This is sufficient to create a genuine issue for trial.

### 2. Proximate Cause

The report[1] from the salvage crew who refloated the vessel after it sunk indicated that a fitting for a through-hull valve normally plumbed to a bait well pump (but disconnected by Defendant while work was to be performed) was at or below the water line and that the valve was in the open position. (Dkt. No. 41-1.) This allowed water to run directly into the bilge. (*Id*.) Michael McGlenn, the surveyor for Plaintiffs' insurer, concluded that this caused the sinking. (Dkt. No. 40-16 at 7.) He theorized that Defendant left the through-hull valve open. (Dkt. No. 45-1 at 7.) He believes that for some period of time the bilge pumps may have kept up with the flow. (*Id*.) Eventually, the pumps would have been unable to do so. (*Id*.) Once this happened, the vessel would dip as it takes on water. (*Id*.) Eventually, it would dip to the point that the water line would be above two unplugged fittings leading to disengaged engine exhaust pipes, higher up on the hull. (Dkt. No. 40-16 at 7.) Once this happened, the sinking would be "fast and complete." (*Id*.)

Lynne Reister, the surveyor for Defendant's insurer, generally agreed with Mr. McGlenn's findings. (*See* Dkt. No. 40-17 at 5.) But she disagreed in critical areas. She notes that

---

[1] Defendant asserts the salvage crew's communication of its findings is hearsay. (Dkt. No. 44 at 19–20.) But since it can be reduced to an admissible form at trial through testimony the Court will consider it. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

the salvage crew did not "fully dewater" the vessel after raising it and, as a result, it would have been below its "normal static position." (Dkt. No. 45-1 at 60.) While the fitting leading to the open through-hull valve was at or below the water line at this lower position, it would not have been at its normal position. (*Id.* at 59.) Further, she contends that if the fitting were at or below the water line with the valve open, "water would have been shooting from the open spud" and this would be plainly evident upon a cursory inspection. (*Id.* at 59–60.) Fred Low, one of Defendant's employees, indicated that when the vessel was launched he "looked at every inch of the boat that was available to be seen, and there was no water coming into the boat, and I checked it multiple times." (*Id.* at 53.) Mr. Low also testified that he "checked on [the vessel] every morning and every afternoon" while it was in the boathouse, except for a long weekend, and found no water in the vessel. (*Id.* at 54.) Ms. Reister also noted that Defendant's practice is "to close all valves" before launch. (*Id.* at 60.) Lauren Bivens, Defendant's representative, confirmed this practice. (*See id.* at 18). Mr. Low also testified that he personally checked the valve when the vessel first went into the water. (*See id.* at 53) ("I can guarantee that I checked that when it first went into the water.").

The vessel stayed afloat in the boathouse for approximately nineteen days: November 3–November 22. (Dkt. Nos. 39 at 8, 40-7 at 2–3.) After it sank, the valve was found in the open position and the garage-style doors for the boathouse were wide open. (Dkt. No. 40-16 at 5.) Defendant speculates that Ms. James, who saw the boat floating at its normal position two days earlier, may have inadvertently left the boathouse's door open. (Dkt. No. 44 at 17.) Defendant further speculates that someone may have entered the boathouse and opened the valve and/or turned off the bilge pumps. (*Id.*) Alternatively, the open garage-style door may have exposed the vessel to winter weather, which could have rocked it to the point that water came into contact with the through-full fitting. (Dkt. No. 44 at 17.) "Rank speculation" is insufficient to avoid summary judgment. *McSherry v. City of Long Beach*, 584 F.3d 1129, 1138 (9th Cir. 2009). But this is more than rank speculation. These are reasonable inferences that may be drawn from the

evidence presented. *See Anderson*, 477 U.S. at 247–50 (Court must draw inferences in Defendant's favor). Therefore, Defendant presents sufficient evidence to create a genuine issue for trial.

Accordingly, the Court DENIES summary judgment on Plaintiffs' bailment claim.

**C.     Breaches of Contract and the Warranty of Workmanlike Performance**

Plaintiffs also move for summary judgment on their breach of contract and breach of the implied warranty of workmanlike performance claims. (*See generally* Dkt. No. 39.) They bring the claims based on Defendant's failure to return the vessel in a repaired, upgraded, and seaworthy condition. (Dkt. No. 14 at 4–6.) Defendant did not directly address Plaintiffs' breach of contract or breach of workmanlike performance claims when it responded to Plaintiffs' summary judgment motion. (*See generally* Dkt. No. 44.) Therefore, Plaintiffs urge the Court to treat the facts supporting these claims as undisputed and grant summary judgment. (Dkt. No. 48 at 2–3) (citing Fed. R. Civ. P. 56(e)(2–3)). But Defendant provides evidence supporting its allegation that Plaintiffs instructed Defendant to return the vessel unfinished and that Defendant's actions were not the proximate cause of the vessel's sinking. *See supra* part II.B. This evidence is as relevant for Plaintiffs' breach of contract and breach of warranty claims as it is for Plaintiffs' bailment claim. Accordingly, the Court DENIES summary judgment on Plaintiffs' breach of contract and breach of the implied warranty of workmanlike performance claims.

**D.     Affirmative Defenses**

In addition, Plaintiffs move to dismiss the following affirmative defenses: comparative fault, third-party fault, and failure to state a claim. (Dkt. No. 39 at 22–24.)[2] As to comparative fault, Defendant presents evidence that Zane White instructed it to launch the vessel and that Mr. White made no arrangements to check on the vessel while it was in the boathouse. (*See* Dkt. No.

---

[2] Plaintiffs also moved the Court to dismiss the affirmative defense of waiver. (*Id*.) Defendant since withdrew that defense. (Dkt. No. 44 at 2.)

45-1 at 11, 17, 23–24) (supporting testimony from Defendant's representative and one of its employees that Mr. White told Defendant to launch the vessel because he was anxious to take it fishing). For purposes of the instant motion, the Court must assume these facts to be true. *Anderson*, 477 U.S. at 247–50 (1986). As to third-party fault, Defendant presents evidence that the valve at issue was closed when Defendant launched it, that Ms. James was the last known person to visit the boathouse, and that the boathouse's garage-style door was wide open when the vessel was discovered sunken with the valve open. (Dkt. Nos. 40-16 at 5; 45-1 at 32–34, 53.) Accordingly, Plaintiffs' motion to dismiss Defendant's comparative and third-party defenses is DENIED.

Finally, failure to state a claim is not a proper affirmative defense. *Kaiser v. CSL Plasma Inc.*, 240 F. Supp. 3d 1129, 1134 (W.D. Wash. 2017). It should be brought by motion, and the time to do so has lapsed. (*See* Dkt. No. 16.) Accordingly, Plaintiffs' motion to dismiss Defendant's failure to state a claim defense of is GRANTED.

### E. Defendant's Admissions & Breach of Contract Claim

Defendant alleges Plaintiffs still owe it $75,304 ($58,651 for parts/services before the vessel sunk and $16,653 after it sunk) and that Plaintiffs' failure to pay represents a breach of contract. (Dkt. No. 40-24 at 2.) Plaintiffs move for summary judgment, alleging no amount remains outstanding. (Dkt. No. 39 at 20.) Before addressing Plaintiffs' summary judgment motion (*Id*.), the Court must resolve Defendant's motion to withdraw its admissions (Dkt. No. 46).

Plaintiffs served the following requests for admissions on December 21, 2017:

REQUEST FOR ADMISSION NO. 8: Admit [Defendant] wrote off or otherwise credited $58,651.00 of the balance of the [vessel] repairs, upgrades, and improvements as indicated in Exhibit 1.

REQUEST FOR ADMISSION NO. 9: Admit no amounts remain owing on plaintiffs' account relating to the August 2015–November 2015 [vessel] project, including amounts claimed for repairs, upgrades, improvements, lay days, salvage efforts, and storage.

(Dkt. No. 40-22 at 2.) Defendant's response was due January 25, 2018. *Id.*, Fed. R. Civ. P. 36(a)(3), *as modified by* Fed. R. Civ. P. 6(a)(1)(C), 6(d). Defendant served its response, denying the admissions, on February 5, 2018. (Dkt. No. 40-23.) In its untimely response, Defendant explained that any credit was "upon the advice of its outside accounting firm" and should not be "properly construed as a credit." (*Id.*) But because the response was untimely, it is deemed admitted, absent relief from the Court. Fed. R. Civ. P. 36(a)(3), (b). Defendant moves to withdraw these admissions. (*See generally* Dkt. No. 46.)

The Court may permit withdrawal of an admission, but only if withdrawal would promote the presentation of the case on the merits and not prejudice the party obtaining the admission. Fed. R. Civ. P. 36(b). For these purposes, prejudice is defined as "the difficulty a party may face in proving its case." *Conlon v. U.S.*, 474 F.3d 616, 622 (9th Cir. 2007). But even if the two-prong test is met, the Court may still elect not to allow withdrawal, based on other considerations. *Conlon v. U.S.*, 474 F.3d 616, 624–25 (9th Cir. 2007).

Here, withdrawing the admission would promote the presentation of the case on the merits. Absent withdrawal, Defendant's admission is fatal to $58,651 of its counter-claim. (Dkt. No. 46 at 4.) However, withdrawal would prejudice Plaintiffs. While Defendant's response was only ten-days late, the impact of the delay was significant, as the discovery deadline passed the day before Defendant served its responses. (Dkt. No. 16). As a result, Plaintiffs could not seek additional discovery based on Defendant's denial. Further, even if Plaintiffs would not suffer prejudice, Defendant does not allege that its oversight was due to good cause. (*See* Dkt. No. 46 at 3) (noting that responsibility for the tardy response "rests entirely with the undersigned counsel").

Accordingly, Defendant's motion to withdraw its admissions is DENIED.

The only remaining amount left on Defendant's counter-claim is the $16,653 in costs and fees Defendant charged for the salvage and storage of the vessel after it sank. (Dkt. No. 39 at 20.) Plaintiffs assert this amount was fully paid by Plaintiffs' insurer. (*Id.*) In support, Plaintiffs

present an accounting entry from Defendant's records showing that this amount was received and credited to Mr. White's account. (Dkt. No. 40-21.) Defendants point to no evidence disputing this payment. (*See generally* Dkt. No. 44 at 24.) Instead, Defendant argues the evidence lacks foundation. (*Id.*) But Defendants ignore the admission of its representative that this amount was paid and credited to Plaintiffs' account. (*See* Dkt. No. 40-20 at 8–9.) Accordingly, the Court GRANTS summary judgment to Plaintiffs on Defendant's counter-claims, which are dismissed with prejudice.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw admissions (Dkt. No. 46) is DENIED and Plaintiffs' summary judgment motion (Dkt. No. 39) is GRANTED in part and DENIED in part. Defendant's counter-claim for breach of contract is dismissed, as is Defendant's affirmative defense of failure to state a claim. All remaining claims and defenses will be resolved at trial.

DATED this 16th day of April 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE